# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE | : | CASE NO. 15-50748 |
| | : | |
| HARVEST OIL & GAS, LLC, *ET AL*[1] | : | CHAPTER 11 |
| | : | |
| DEBTORS. | : | JOINTLY ADMINISTERED |

**EMERGENCY MOTION FOR ENTRY OF ORDER PURSUANT TO
SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 4001 FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE
OF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION;
(3) MODIFYING THE AUTOMATIC STAY; (4) SCHEDULING AND
APPROVING THE METHOD OF NOTICE FOR THE FINAL HEARING;
AND (5) PROVIDING RELATED RELIEF**

**NOW INTO COURT**, through undersigned counsel, come Harvest Oil & Gas, LLC,

Saratoga Resources, Inc. ("Saratoga"), The Harvest Group LLC, Lobo Operating, Inc. ("Lobo

Operating"), and Lobo Resources, Inc., as debtors and debtors-in-possession (collectively, the

"Debtors"), and file this motion ("Motion") requesting: interim and final orders pursuant to

sections 361, 362, 363 and 507 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, as

amended, the "Bankruptcy Code") and Rules 4001, 6004(h), 70662 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) authorizing the Debtors to use

cash which may constitute cash collateral under the Bankruptcy Code ("Cash Collateral") on the

terms and conditions set forth herein; (b) granting adequate protection; (c) modifying the

automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to

implement and effectuate the relief requested herein; (d) scheduling and approving the method of

---

[1] Saratoga Resources, Inc. (15-50749); The Harvest Group LLC (15-50750); LOBO Operating,
Inc. (15-70751); and LOBO Resources, Inc. (15-50752) are being jointly administered with
Harvest Oil & Gas, LLC (15-50748) pursuant to a court order [P-4] entered on June 19, 2015.

3721.19432{00345278-10}

notice of the final hearing on the Motion (the "Final Hearing"); and (e) providing related relief. In further support of this Motion, the Debtors respectfully state as follows:

## I. JURISDICTION AND VENUE

1.        This Court has jurisdiction over these cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2.        Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory bases for the relief requested herein are sections 361, 362, 363 and 507 of the Bankruptcy Code and Rules 4001, 7062 and 9014 of the Bankruptcy Rules.

## II. STATEMENT REQUIRED PURSUANT TO SECTION 4001(b)(1)(B) OF THE BANKRUPTCY RULES

4.        The First Lien Noteholders and the Second Lien Noteholders (defined below) assert valid properly-perfected liens on and security interests in the Debtors' Cash Collateral. The Debtors seek to use Cash Collateral to pay the expenses in accordance with the proposed budget attached hereto as **Exhibit A.**

5.        A summary of the proposed material terms of the use of Cash Collateral include the following[2]:

    **A.**    **Stipulations**: Paragraph 11 of the Proposed Interim Cash Collateral Order provides that the Debtors will stipulate and agree to the following:

    (a)    As of the Petition Date, the Debtors were liable to the First Lien Noteholders in respect of obligations under the First Lien Indenture for (i) aggregate principal amount of not less than [$54,600,000.00] on account of the Notes issued under the First Lien Indenture; (ii) accrued and unpaid interest in an aggregate amount of

---

[2] The following summary and all other descriptions herein of the terms of the Proposed Interim Cash Collateral Order are provided for convenience only, and to the extent that the following summary and all other descriptions herein of the terms of the Proposed Interim Cash Collateral Order are inconsistent with the Proposed Interim Cash Collateral Order, the terms of the Proposed Interim Cash Collateral Order shall control. Capitalized terms not described in the following summary shall have the meanings ascribed to below in the Motion.

2

not less than [$2,614,248.00] on account of the Notes issued under the First Lien Indenture; and (iii) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law (collectively the "First Lien Obligations").

(b)    As of the Petition Date, the Debtors were liable to the Second Lien Noteholders in respect of obligations under the Second Lien Indenture for (i) aggregate principal amount of not less than [$125,200,000.00] on account of the Notes issued under the Second Lien Indenture; (ii) accrued and unpaid interest in an aggregate amount of not less than [$16,099,527.53] on account of the Notes issued under the Second Lien Indenture; and (iii) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law (collectively the "Second Lien Obligations").

(c)    As of the Petition Date, the First Lien Obligations and the Second Lien Obligations are due and owing by the Debtor.

(d)    As of the Petition Date, all claims in respect to the First Lien Obligations and the Second Lien Obligations (i) constitute legal, valid, binding and nonavoidable obligations of the Debtors and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

**B.    Challenge Period:** Paragraph 12 of the Proposed Interim Cash Collateral Order provides that the Debtors' Stipulations shall be binding upon the Debtors in all circumstances upon entry of the Proposed Interim Cash Collateral Order. Paragraph 12 also provides the Debtors' Stipulation shall be binding upon each other party in interest, including any statutory committee appointed in these Chapter 11 Cases (the "Committee"), unless such Committee or such other party in interest (including any Chapter 11 trustee appointed) other than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such successor cases), *first*, commences, by the earlier of (x) with respect to any Committee, sixty (60) calendar days from the formation of any Committee, and (y) with respect to other parties in interest with requisite standing other than the Debtors or any Committee, seventy-five (75) calendar days following the date of entry of this Order (such time period established by the earlier of clauses (x) and (y), as the same may be extended in accordance with this Paragraph 12, shall be referred to as the "Challenge Period,".

**C.    Adequate Protection**: Paragraph 21 of the Proposed Interim Cash Collateral Order provides that the First Lien Noteholders and Second Lien Noteholders will receive the following as adequate protection as more fully described herein: (1) payment of the

{00345278-10}

First Lien Trustee's, Second Lien Trustee's, and Majority Noteholders' professionals' fees and expenses; (2) Adequate Protection Liens; and (3) Superpriority Claims.

**D.     Waivers:** Paragraph 14 of the Proposed Interim Cash Collateral Order provides that in light of the agreement of the Prepetition Secured Parties to subordinate their liens and claims to the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Order, the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, are each entitled to (a) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b); (b) a waiver of the provisions of Bankruptcy Code section 506(c) related to the period of time from the Petition Date to the Termination Date; and (c) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral (as defined herein) or the Prepetition Collateral.

**E.     Termination Events:** Paragraph 18 of the Proposed Interim Cash Collateral Order lists out "Termination Events" that are standard for the use of cash collateral. The Proposed Interim Cash Collateral provides as a "Termination Event" a date of September 25, 2015, unless extended by the Majority First Lien Noteholders, in their sole discretion.

**F.     Termination of the Use of Cash Collateral and Automatic Stay** – Paragraph 19 of the Proposed Interim Cash Collateral Order provides that immediately upon the occurrence of a Termination Event, the First Lien Trustee, at the direction of the Majority First Lien Noteholders, may declare a termination, reduction, or restriction of the ability of the Debtors to use Cash Collateral, except for (i)  funds shown on the Approved Budget which have not yet been expended may be expended for the purposes set forth in the Approved Budget during the Remedies Notice Period after the Termination Date and (ii) the limited use of Cash Collateral during the Remedies Notice Period (as defined below) to pay payroll, related payroll taxes, and critical expenses as determined by the Debtors (any such declaration shall be referred to as a "Termination Declaration").  The Termination Declaration shall be given by email to counsel for the Debtors and the U.S. Trustee and shall be filed with the Court (the earliest date any such Termination Declaration is made shall be referred to as the "Termination Date").  The First Lien Trustee, at the direction of the Majority First Lien Noteholders, may waive the occurrence of a Termination Event.  During the five (5) business days immediately after the Termination Declaration Date (the "Remedies Notice Period"), the Debtors shall only be authorized to pay (i) payroll, related payroll taxes, and critical expenses as determined by the Debtors and as set forth on the Approved Budget and (ii) funds shown on the Approved Budget which have not yet been expended may be expended for the purposes set forth in the Approved Budget after the Termination Date. During the Remedies Notice Period, the Debtors, the First Lien Trustee on behalf of the First Lien Noteholders, and any Committee shall be entitled to an emergency hearing before the Court for the purpose of contesting whether a Termination Event has occurred and/or seeking the non-consensual use of Cash Collateral subject to the Carve Out.  Unless during such Remedies Notice Period (or such additional period established by the Court) the Court determines that a Termination Event has not occurred and/or is not continuing, or grants

authority for the continued use of Cash Collateral by the Debtors, the Debtors shall no longer have the right to use such non-consensual Cash Collateral (other than the Carve-Out) and the automatic stay under section 362 of the Bankruptcy Code, as to the Prepetition Secured Parties, shall automatically terminate at the end of the Remedies Notice Period, without further notice or order. For the avoidance of doubt, upon the automatic termination of the automatic stay at the end of the Remedies Notice Period, the First Lien Trustee, on behalf of the First Lien Noteholders, shall be deemed to have relief from the automatic stay in order to exercise all of its rights and remedies under this Order, the Prepetition Loan Documents, or applicable law, as the case may be. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Trustees on behalf of the First Lien Noteholders and the Second Lien Noteholders under this Order shall survive the Termination Date.

**G.     Restrictions of Use of Cash Collateral:** Paragraph 20 of the Proposed Interim Cash Collateral Order provides certain restrictions of the use of Cash Collateral which are standard and customary for the use of cash collateral.

**H.     Carve-Out**: Paragraph 23(A) of the Proposed Interim Cash Collateral Order provides "Carve-Out" means (A) any and all expenditures authorized or made pursuant to an Approved Budget , whether or not paid: (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6), (ii) the reasonable unpaid fees, disbursements, costs, and expenses incurred by the Debtor Professionals prior to the Termination Date and in accordance with the Approved Budget, to the extent allowed by the Bankruptcy Court, whether by interim order, procedural order or otherwise, (iii) the reasonable unpaid fees, disbursements, costs, and expenses incurred prior to the Termination Date and in accordance with the Approved Budget of professionals retained by the Committee (the "Committee Professionals") and all reasonable unpaid out-of-pocket expenses of the members of the Committee, in each case to the extent allowed by the Bankruptcy Court, whether by interim order, procedural order or otherwise and (iv) after the expiration of the Remedies Notice Period, the sum of $200,000, less the sum of any retainer held by such professional, for fees, disbursements, costs, and expenses incurred by the Debtor Professionals and the sum of $25,000, less the sum of any retainer held by such professional, for fees, disbursements, costs, and expenses thereafter incurred by the Committee Professionals, if any. The preceding clauses (i)-(iv) are each subject to the rights of any party in interest to object to the allowance of any such fees, disbursements, costs, and expenses. For the avoidance of doubt, and without limiting the foregoing,  (A) the Debtors are authorized, subject to applicable court orders, to pay any fee, disbursement, cost, or expense that falls within the Carve-Out; and (B) Cash Collateral may be used for (1) payment of fees, disbursements, costs, and expenses of the Debtor Professionals or the Committee Professionals (or any out-of-pocket expenses of any member of the Committee), as allowed and payable, whether by interim order, procedural order or otherwise, or under Bankruptcy Code sections 330 and 331, and (2) payments otherwise agreed to by the Majority First Lien Noteholders, provided, however, that in each case such payments

{00345278-10}

shall be in accordance with the Approved Budget or otherwise in accordance with this Order.

**I.** **Releases:** Paragraph 24 of the Proposed Interim Cash Collateral Order provides for standard and customary releases of the First Trustee, Second Lien Trustee, First Lien Noteholders, Second Lien Noteholders, and their respective participants and each of their respective affiliates, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and predecessors in interest.

**J.** **Other Provisions:** The Proposed Interim Cash Collateral Order provides for such other terms as are customary for the use of cash collateral, all as more fully set forth therein.

## III. BACKGROUND

6. On June 18, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

7. The Debtors remain in possession of their property and are managing their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8. No trustee has been appointed and no official committee has been established in these cases.

9. This Court is referred to the *Debtors' Emergency Motion for Order Under Fed. R. Bankr. P. 1015(b) Directing Joint Administration of Chapter 11 Cases* [P-3] ("Joint Administration Motion") for a detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these chapter 11 cases ("Chapter 11 Cases"). Capitalized terms not defined herein are as defined in the Joint Administration Motion.

6

# IV. **PREPETITION INDEBTEDNESS**

10.     Prior to the Petition Date, the Debtors granted prepetition liens and security interests to the Prepetition Secured Creditors (defined below), including the Debtors' Cash Collateral, under the following documents (collectively, the "Prepetition Loan Documents"):

(e)     That certain Indenture dated as of November 22, 2013 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "First Lien Indenture"), by and among Saratoga Resources, Inc., the Guarantors party to the First Lien Indenture (collectively, with Saratoga Resources, Inc., the "First Lien Credit Parties") and the Bank of New York Mellon Trust Company, N.A., as trustee (in such capacity, the "First Lien Trustee"), pursuant to which, among other things, the Debtors issued notes to certain holders (each a "First Lien Noteholder" and collectively, the "First Lien Noteholders").

(f)     That certain Indenture dated as of July 12, 2011 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Indenture"), by and among Saratoga Resources, Inc., the Guarantors party to the Second Lien Indenture (collectively, with Saratoga Resources, Inc., the "Second Lien Credit Parties") and Wilmington Savings Fund Society, FSB, successor to Bank of New York Mellon Trust Company, as trustee (in such capacity, the "Second Lien Trustee" and, together with the First Lien Trustee, the "Trustees"), pursuant to which, among other things, the Debtors issued notes to certain holders (each a "Second Lien Noteholder" and collectively, the "Second Lien Noteholders").  The First Lien Trustee, the First Lien Noteholders, the Second Lien Trustee, and the Second Lien Noteholders are collectively referred to herein as the "Prepetition Secured Parties."

(g)     That certain Security Agreement dated as of November 22, 2013 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "First Lien Security Agreement"), by and among Saratoga Resources, Inc., the Grantors party to the First Lien Security Agreement and the Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent.

(h)     That certain Security Agreement dated as of July 12, 2011 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Security Agreement"), by and among Saratoga Resources, Inc., the Grantors party to the Second Lien Security Agreement and the Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent.

(i)     That certain Intercreditor Agreement dated as of November 22, 2013 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), by and among Saratoga Resources,

{00345278-10}

Inc., the Guarantors party to the Intercreditor Agreement, the First Lien Trustee, and the Second Lien Trustee.

11.     Before the Petition Date, the First Lien Credit Parties and the First Lien Trustee, on January 30, 2015, entered into that certain Forbearance Agreement to First Lien Indenture (the "First Lien Indenture Forbearance Agreement") pursuant to which the First Lien Credit Parties acknowledged and agreed that (i) as of January 30, 2015, the aggregate principal balance of the outstanding obligations under the First Lien Indenture was $54,600,000, (ii) the interest, including default interest accruing pursuant to section 2.12 of the First Lien Indenture, that was due and payable as of January 30, 2015 was $1,378,650, and (iii) the interest accrued that was not due and payable as of January 30, 2015 was an additional $455,000.

12.     Before the Petition Date, the Second Lien Credit Parties and the Second Lien Trustee, on January 30, 2015, entered into that certain Forbearance Agreement to Second Lien Indenture (the "Second Lien Indenture Forbearance Agreement")(together, with the First Lien Indenture Forbearance Agreement, the "Forbearance Agreements") pursuant to which the Second Lien Credit Parties acknowledged and agreed that (i) as of January 30, 2015, the aggregate principal balance of the outstanding obligations under the Second Lien Indenture was $125,200,000, (ii) the interest, including default interest accruing pursuant to section 2.12 of the Second Lien Indenture, that was due and payable as of January 30, 2015 was $7,919,552.08, and (iii) the interest accrued that was not due and payable as of January 30, 2015 was an additional $1,304,166.67.

13.     Pursuant to the terms of the First Lien Indenture, First Lien Noteholders holding a majority in aggregate principal amount of the then outstanding Notes issued under the First Lien Indenture (collectively, the "Majority First Lien Noteholders") may direct the First Lien Trustee in its exercise of any trust or power.  Pursuant to the terms of the Intercreditor Agreement, until

8

the discharge of the First Lien Obligations (as defined below), the First Lien Trustee and the First Lien Noteholders have the exclusive right to exercise remedies with respect to the "Collateral" as defined in the Intercreditor Agreement and to make determinations regarding the release or disposition, or restrictions with respect to, the "Collateral" as defined in the Intercreditor Agreement, and the Second Lien Trustee, for itself and on behalf of the Second Lien Noteholders, waived any and all rights it or the Second Lien Noteholders may have as junior lien creditors or otherwise to object to the manner in which the First Lien Trustee and the First Lien Noteholders seek to enforce or collect the First Lien Obligations.

14.     To secure the First Lien Obligations, in accordance with the Prepetition Loan Documents, each "Grantor," as defined in the First Lien Security Agreement, granted the First Lien Trustee, on behalf of the First Lien Noteholders, valid, perfected, enforceable and non-avoidable first priority security interests in and continuing liens (the "First Lien Prepetition Liens") which the Grantors have agreed are valid, perfected, enforceable and non-avoidable in the First Lien Forbearance Agreement and which shall be deemed valid, perfected, enforceable and non-avoidable upon entry of this Order (subject to applicable Challenge Period with respect to non-Debtor parties, if any), on all "Collateral," as defined in the First Lien Security Agreement, constitutes substantially all of each such Grantor's assets and properties (which, for the avoidance of doubt, includes all cash and Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, other than the "Excluded Assets," as defined in the First Lien Indenture (collectively, the "First Lien Prepetition Collateral").

15.     To secure the Second Lien Obligations, in accordance with the Prepetition Loan Documents, each "Grantor," as defined in the Second Lien Security Agreement, granted the

{00345278-10}

Second Lien Trustee, on behalf of the Second Lien Noteholders, valid, perfected, enforceable and non-avoidable second priority security interests in and continuing liens (the "Second Lien Prepetition Liens" and, together with the First Lien Prepetition Liens, the "Prepetition Liens") which the Grantors have agreed in the Second Lien Forbearance Agreement are valid, perfected, enforceable and non-avoidable and which shall be deemed valid, perfected, enforceable and non-avoidable upon entry of this Order (subject to applicable Challenge Period with respect to non-Debtor parties, if any), on all "Collateral," as defined in the Second Lien Security Agreement, which constitutes substantially all of each such Grantor's assets and properties (which, for the avoidance of doubt, includes all cash and Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, other than the "Excluded Assets," as defined in the Second Lien Indenture (collectively, the "Second Lien Prepetition Collateral" and, together with the First Lien Prepetition Collateral, the "Prepetition Collateral").

## VI.  <u>REQUESTED RELIEF</u>

16.     By this Motion, the Debtors respectfully request: (a) authorization and approval, pursuant to sections 105(a), 362, 363,  and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014 to (i) use Cash Collateral on an interim basis in accordance with the proposed interim order submitted herewith and attached hereto as **Exhibit B** (such order, the "Proposed Interim Cash Collateral Order") and, after the Final Hearing on this Motion, to use Cash Collateral in accordance with a final order in substantially the form of the Proposed Interim Cash Collateral Order (such order, the "Final Cash Collateral Order"), to pay expenses in accordance with the proposed budget attached hereto as **<u>Exhibit A</u>** (the "Approved Budget") (including any "Permitted Variances" (as defined in the Proposed Interim Cash Collateral

{00345278-10}

Order)); (ii) grant the Adequate Protection Liens (defined below) to the First Lien Noteholders and the Second Lien Noteholders with the same respective validity and priority as their prepetition liens, to secure any post-petition diminution in value of their interests in Cash Collateral to the extent such pre-petition liens are entitled to adequate protection against diminution under the Bankruptcy Code; (iii) to protect against any diminution in value, grant the Superpriority Claims (defined below), as set forth herein; and (iv) pending the Final Hearing on the Motion, use Cash Collateral on a limited and interim basis to and including the date on which the Final Order is entered; and (b) in accordance with Bankruptcy Rule 4001(b)(2), schedule the Final Hearing and approve notice with respect thereto, all as more fully described in the Proposed Interim Cash Collateral Order.

## VII. BASIS FOR RELIEF

### A. The Need for Use of Cash Collateral

17. The Debtors seek authority, pursuant to Section 363 of the Bankruptcy Code, to use Cash Collateral of the First Lien Noteholders and Second Lien Noteholders to maintain the Debtors' operations as a going concern and to avoid irreparable harm.

18. Without authority to use Cash Collateral, the Debtors would not have sufficient available sources of working capital and financing to pay their normal operating expenses and will thus be unable to continue to operate and produce and sell oil and natural gas. Without access to the Cash Collateral, the Debtors' ability to manage, administer and preserve the Debtors' estates would be immediately and irreparably harmed, thereby materially impairing the estates and creditors, and the possibility for a successful reorganization in these Chapter 11 Cases.

{00345278-10}

19. The disruption in the use of Cash Collateral will adversely affect the operations and force an immediate shut down of the Debtors' revenue producing operations. A complete shutdown of Debtors' properties and operations would result in the loss of employees, the diminished value of collateral securing the interests of various creditors, and the possibility that creditors would receive no meaningful distribution. The use of Cash Collateral is critical to the Debtors in order to maintain the properties and produce oil and gas revenues.

20. The Approved Budget provides for payment of restructuring costs, including periodic payments to the Debtors' professionals engaged in these chapter 11 cases. As long as the First Lien Noteholders and the Second Lien Noteholders are adequately protected or consent, the Debtors' use of the Cash Collateral to pay their professionals is allowed. See In re Desert Gardens IV, LLC, 2012 WL 860369 (Bankr. D. Ariz. March 12, 2012) ("Debtor …is permitted to pay its estate professionals from cash collateral" so long as the creditor is adequately protected.); In re WBE Co., Inc., 2007 WL 4892121 (Bankr. D. Neb. December 21, 2007) ("A debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected[.]"); In re Mulberry Corp., 265 B.R. 468 (Bankr. M.D. Fla. 2001) (debtor may use cash collateral to pay professionals if it offers adequate protection to the parties whose cash collateral is being used); In re Coventry Commons Assoc., 149 B.R. 109 (Bankr. E.D. Mich. 1992) (a debtor may use cash collateral to pay professional fees if the secured creditor is adequately protected, without regard to the requirements of section 506 of the Bankruptcy Code).

21. As discussed below, the Debtors contend that First Lien Noteholders and Second Lien Noteholders are adequately protected and moreover, the First Lien Noteholders and Second Lien Noteholders have consented to the use of Cash Collateral for the payment of professionals'

{00345278-10}

fees and expenses on the terms provided in the Proposed Interim Cash Collateral Order; thus, payment of the Debtors' professionals' fees and expenses using the Cash Collateral is proper.

**B.**      **Proposed Adequate Protection**

22.      Whether or not a creditor is adequately protected is determined on a case-by-case basis. See In re Gibson, 450 B.R. 585 (Bankr. D. S.C. 2011) ("a determination of whether Debtor's . . . plan provides . . . adequate protection must necessarily depend on the specific facts and circumstances of Debtor's case."); In re DB Capital Holdings, LLC, 454 B.R. 804 (Bankr. D. Colo. 2011) ("Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is evaluated on a case-by-case basis."); In re Green, 436 B.R. 91(Bankr. S.D. Ill. 2010) ("While "adequate protection" is not defined by the Bankruptcy Code, whether a particular secured creditor is adequately protected is a determination to be made on a case-by-case basis and is within the discretion of the court.")

23.      Adequate protection exists by virtue of augmentation (or preservation) of the value of a secured creditor's collateral. See In re Las Vegas Monorail Co., 429 B.R. 317 (Bankr.. D. Nev. 2012) ("use of the cash it generates in its operations is itself a form of adequate protection. This is because [debtor's] continued investment in, and operation of, the [collateral] will increase, or at least maintain, the collateral's value."); In re Ralar Distribs., Inc., 166 B.R. 3, 6 (Bankr. D. Mass. 1994) ("[a]ctivities of a debtor can enhance collateral value and thereby provide adequate protection"); In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72 (1st Cir. 1995); and In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716-717 (Bankr. D. Del. 1996) (court found secured creditor was adequately protected given lack of evidence that collateral was diminishing, debtor had operated profitably and was projected to continue operating profitably).

{00345278-10}

24.     Section 361(2) of the Bankruptcy Code specifically provides that adequate protection may be provided by "providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. §361(2); In re Gary L. Zars, 434 B.R. 421, 431 (W.D. Tex. 2010) ("Adequate protection for such a creditor holding a secured interest or cash collateral would include . . . additional or replacement liens").

25.     The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361 and 363(c) and (e), to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, equal to the aggregate diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral (the "Adequate Protection Obligations").   As such, (i) the First Lien Trustee, for the benefit of itself and the First Lien Noteholders, is entitled to receive adequate protection to the extent of any diminution in value of their interest in the First Lien Prepetition Collateral (including the Cash Collateral) and (i) the Second Lien Trustee, for the benefit of itself and the Second Lien Noteholders, is entitled to receive adequate protection to the extent of any diminution in value of their interest in the Second Lien Prepetition Collateral (including Cash Collateral), in each case resulting from the use of Cash Collateral, the use, sale or lease of Prepetition Collateral, the subordination of the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims to the Carve-Out, as described herein, or the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to Bankruptcy Code sections 361, 362 and 363. Accordingly, the Prepetition Secured Parties are hereby provided with the following forms of adequate protection.

26.     Accordingly, the Debtors seek to provide the Prepetition Secured Parties with the following forms of adequate protection:

{00345278-10}

(a)     Fees and Expenses. The Debtors are authorized and directed to pay when due and payable and without regard to whether such fees, disbursements, costs, and expenses were incurred prepetition or postpetition, and without regard to whether such fees, disbursements, costs, and expenses are set forth on the Approved Budget, the reasonable and documented fees, disbursements, costs, and expenses incurred by (i) the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders, and such professionals and/or consultants retained by the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders (collectively, the "Noteholder Professionals"), in each case including, without limitation, in connection with protecting the rights and interests of the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders in connection with the Chapter 11 Cases, provided that if the payment of such aggregate reasonable fees, disbursements, costs, and expenses of the Noteholder Professionals causes the Debtors' expenditures to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event, and (ii) the Majority First Lien Noteholders, and such professionals and/or consultants retained by the Majority First Lien Noteholders, including Latham & Watkins LLP and Jones Walker LLP (collectively, the "Majority First Lien Noteholder Professionals"), provided that if the payment of such aggregate reasonable fees, disbursements, costs, and expenses of the Majority First Lien Noteholder Professionals causes the Debtors' expenditures to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event.  In each case, payment shall be due from the Debtors upon ten (10) calendar days of receipt of a reasonably detailed, line-item invoice, redacted for privilege, with copies provided contemporaneously to counsel for the Debtors, the Committee, and the U.S. Trustee.  The Debtors are authorized and directed to pay all fees, disbursements, costs, and expenses in accordance with the terms of this Order, without the First Lien Trustee, on behalf of the First Lien Noteholders, the Second Lien Trustee, on behalf of the Second Lien Noteholders, or the Majority First Lien Noteholders having to file any further application with this Court for approval or payment of such fees, disbursements, costs, and expenses (except as may be required in accordance with the Local Rules of the Bankruptcy Court). All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(b)     Adequate Protection Liens and Adequate Protection Superpriority Claim for Prepetition Secured Parties. Subject and subordinate to the Carve-Out, the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders, are hereby granted: (i) valid, enforceable, nonavoidable and fully perfected, first-priority postpetition security interests in and liens (deemed effective and perfected upon the date of entry of the Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) (the "Adequate Protection Liens") on all of the

15

Collateral solely to provide adequate protection for the Diminution in Value, if any, and only in the proven amount of same, of the Prepetition Secured Parties' interest in Cash Collateral, as measured from the Petition Date through the Termination Date; and (ii) first priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552 (subject to entry of a Final Order), 726 (to the extent permitted by law), 1113 and 1114, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent cases or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate Diminution in Value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders in the Cash Collateral as measured from the Petition Date through the Termination Date; including, without limitation, any such diminution in value resulting from, and so long as in accordance with applicable law (a) depreciation, physical deterioration, use, loss, sale or decline in market value of the Prepetition Collateral; (b) the Carve-Out; or (c) imposition of the automatic stay under section 362 of the Bankruptcy Code or otherwise. For purposes of this Order, the term "Collateral" shall include, without limitation, any and all prepetition and postpetition property, assets and interests in property and assets of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases), and all "property of the estates" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including, without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtors, deposit accounts, commercial tort claims and other causes of action, Cash Collateral and all proceeds of any of the collateral described above; excluding however, all proceeds of avoidance actions under Chapter 5 of the Bankruptcy Code. The Prepetition Liens, Adequate Protection Liens and Superpriority Claims shall be subject and subordinate only to: (i) the Permitted Priority Liens and (ii) payment of the Carve-Out in accordance with the terms and conditions set forth in this Order. Except for the Carve Out, nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders hereunder is insufficient to compensate for any

16

{00345278-10}

Diminution in Value of their interests in the Cash Collateral during the Chapter 11 Cases or any successor cases.

**C.    Modification of Automatic Stay**

27.    Under the Proposed Interim Cash Collateral Order, Unless during such Remedies Notice Period (or such additional period established by the Court) the Court determines that a Termination Event has not occurred and/or is not continuing, or grants authority for the continued use of Cash Collateral by the Debtors, the Debtors shall no longer have the right to use such non-consensual Cash Collateral (other than the Carve-Out) and the automatic stay under section 362 of the Bankruptcy Code, as to the Prepetition Secured Parties, shall automatically terminate at the end of the Remedies Notice Period, without further notice or order.  For the avoidance of doubt, upon the automatic termination of the automatic stay at the end of the Remedies Notice Period, the First Lien Trustee, on behalf of the First Lien Noteholders, shall be deemed to have relief from the automatic stay in order to exercise all of its rights and remedies under this Order, the Prepetition Loan Documents, or applicable law, as the case may be. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Trustees on behalf of the First Lien Noteholders and the Second Lien Noteholders under this Order shall survive the Termination Date.

**VIII.    REQUEST FOR PRELIMINARY AND FINAL HEARINGS**

28.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. Pursuant to Bankruptcy

17

Rule 4001(b), the Debtors request that the Court conduct a preliminary expedited hearing as soon as practicable to enter the Proposed Interim Cash Collateral Order authorizing the Debtors to use Cash Collateral as set forth in the Approved Budget (and as described herein) pending the Final Hearing.

29. Granting the interim relief is clearly warranted. An interim order on an emergency basis authorizing the Debtors to use Cash Collateral will avoid immediate and irreparable harm, will give the Debtors an opportunity to maintain the operations in a manner in the best interests of the Debtors' estates, will inure to the benefit of all parties in interest, and will allow the Debtors to provide assurances to vendors and contractors and should be approved. For these reasons, the Motion is being presented on an emergency interim basis.

30. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors also respectfully request that this Court set a date for the Final Hearing on the Motion that is no earlier than fourteen (14) days from the Petition Date and approve the provisions for notice of such Final Hearing that are set forth in the Proposed Interim Cash Collateral Order and after notice and hearing, enter a Final Cash Collateral Order containing terms similar to the terms and conditions of the Proposed Interim Cash Collateral Order.

31. The Debtors request that they be authorized to serve a copy of the signed Proposed Interim Cash Collateral Order, which fixes the time and date for the Final Hearing and for filing objections, if any, by first-class United States Mail, and a copy of the Proposed Final Cash Collateral Order upon the following: ((i) the Office of the United States Trustee; (ii) the Debtors and their counsel; (iii) any party whose interests are directly affected by a specific pleading; (iv) those persons who have formally appeared and requested notice and service in this proceeding pursuant to Bankruptcy Rules 2002; (v) counsel for and the members of any official

{00345278-10}

committees appointed by this Court; (vi) The Bank of New York Mellon Trust Company, N.A. (as administrative agent on behalf of the First Noteholders) through their counsel; (vii) The Bank of New York Mellon Trust Company, N.A. (as administrative agent on behalf of Second Noteholders) through their counsel; (viii) the Majority Noteholders through their counsel; (ix) the twenty (20) largest unsecured creditors of the Debtors on a consolidated basis; (x) the Securities and Exchange Commission, and (xi) governmental agencies having a regulatory or statutory interest in these cases. The Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules and the rules of this Court, complies with the requirements of due process, and no other or further notice of the Motion and the transactions contemplated thereby shall be required with respect to the entry of the Final Cash Collateral Order.

## IX.  NOTICE

32.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors and their counsel; (iii) any party whose interests are directly affected by a specific pleading; (iv) those persons who have formally appeared and requested notice and service in this proceeding pursuant to Bankruptcy Rules 2002; (v) counsel for and the members of any official committees appointed by this Court; (vi) The Bank of New York Mellon Trust Company, N.A. (as administrative agent on behalf of the First Noteholders) through their counsel; (vii) Wilmington Savings Fund Society (as administrative agent on behalf of Second Noteholders) through their counsel; (viii) the Majority Noteholders through their counsel; (ix) the twenty (20) largest unsecured creditors of the Debtors on a consolidated basis; (x) the Securities and Exchange Commission, and (xi) governmental agencies having a regulatory or statutory interest in these cases.

{00345278-10}

**WHEREFORE**, the Debtors respectfully request that this Court (a) conduct an emergency hearing on this Motion; (b) after the emergency hearing, enter an order substantially in the form of the Proposed Interim Cash Collateral Order submitted herewith as **Exhibit B**; (c) schedule a Final Hearing on the Motion and the relief requested therein; (d) after the Final Hearing, enter a final order on the Motion substantially in the form of the Proposed Interim Cash Collateral Order**,** (e) grant the other relief sought in the Motion, and (f) grant such further relief as may be equitable and just.

Dated:  June 19, 2015.

Respectfully submitted,

*/s/ Tristan E. Manthey*
William H. Patrick, III (La. Bar No. 10359)
Tristan E. Manthey, (La. Bar No. 24539)
Cherie Dessauer Nobles, (La. Bar No. 30476)
**Heller, Draper, Patrick, Horn & Dabney, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana  70130-6175
Telephone:  504-299-3300
Facsimile:  504-299-3399
**Proposed Co-Counsel for Debtors**


Louis Phillips (La. Bar No. 10505)
**Gordon, Arata, McCollam, Duplantis &**
 **Eagan, LLC**
301 Main Street, Suite 1600
Baton Rouge, Louisiana  70801-1916
Telephone:  225-381-9643
Direct Phone:  225-338-5308
Facsimile:  225-336-9763
**Proposed Co-Counsel for Debtors**

{00345278-10}

Saratoga Resources, Inc.
Cash Flow Model
(in $USD)

| | Budget Week 1 | Budget Week 2 | Budget Week 3 | Budget Week 4 | Budget Week 5 | Budget Week 6 | Budget Week 7 | Budget Week 8 | Budget Week 9 | Budget Week 10 | Budget Week 11 | Budget Week 12 | Budget Week 13 | Budget Week 14 | 14 Wk Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week beginning | 6/20/15 | 6/27/15 | 7/4/15 | 7/11/15 | 7/18/15 | 7/25/15 | 8/1/15 | 8/8/15 | 8/15/15 | 8/22/15 | 8/29/15 | 9/5/15 | 9/12/15 | 9/19/15 | |
| Week ending | 6/26/15 | 7/3/15 | 7/10/15 | 7/17/15 | 7/24/15 | 7/31/15 | 8/7/15 | 8/14/15 | 8/21/15 | 8/28/15 | 9/4/15 | 9/11/15 | 9/18/15 | 9/25/15 | |
| Beginning cash | $ 3,653,435 | $ 5,349,771 | $ 4,869,576 | $ 4,305,548 | $ 3,288,840 | $ 5,428,839 | $ 4,711,637 | $ 4,156,469 | $ 2,968,552 | $ 5,075,858 | $ 4,662,415 | $ 3,862,116 | $ 2,956,228 | $ 2,202,337 | $ 3,653,435 |
| **Receipts** | | | | | | | | | | | | | | | |
| Gross oil sales | 2,873,116 | - | - | - | 3,150,269 | - | - | - | 3,255,582 | - | - | - | - | 3,231,181 | 12,510,148 |
| Gross gas sales | 202,483 | - | - | - | - | 296,303 | - | - | - | 406,471 | - | - | - | 386,192 | 1,291,449 |
| Gross ngl sales | - | - | 43,242 | - | - | - | - | 43,274 | - | - | - | 36,591 | - | - | 123,107 |
| Other receipts | 28,138 | - | 14,659 | 29,903 | - | - | - | - | - | 20,000 | - | - | 20,000 | - | 112,700 |
| **Total Receipts** | $ 3,103,737 | $ - | $ 57,901 | $ 29,903 | $ 3,150,269 | $ 296,303 | $ - | $ 43,274 | $ 3,275,582 | $ 406,471 | $ - | $ 36,591 | $ 20,000 | $ 3,617,373 | $ 14,037,404 |
| **Disbursements** | | | | | | | | | | | | | | | |
| *Royalties / Other Revenue Disbursements* | | | | | | | | | | | | | | | |
| Royalties | 660,281 | - | - | - | 286,544 | 424,503 | - | - | 320,630 | 448,559 | - | - | - | 800,632 | 2,941,148 |
| Total Royalties | 660,281 | - | - | - | 286,544 | 424,503 | - | - | 320,630 | 448,559 | - | - | - | 800,632 | 2,941,148 |
| *Operating Disbursements* | | | | | | | | | | | | | | | |
| LOE | 72,215 | 72,215 | 72,215 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 288,862 | 3,394,123 |
| Workover | 50,000 | - | 50,000 | - | 50,000 | - | 50,000 | - | 50,000 | - | 50,000 | - | 50,000 | - | 350,000 |
| G&A | 8,052 | 8,052 | 8,052 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 32,208 | 378,447 |
| Professional fees - ordinary course | 48,100 | 8,100 | 8,100 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 32,400 | 420,700 |
| Insurance | - | 115,688 | 176,350 | - | - | - | 115,688 | - | - | - | 115,688 | - | - | - | 523,414 |
| Payroll & payroll related | - | 220,131 | - | 268,131 | - | 220,131 | - | 268,131 | - | - | 220,131 | - | 268,131 | - | 1,464,784 |
| Lease payments | - | - | 138,702 | - | - | - | - | 20,582 | - | - | - | - | 96,281 | - | 255,564 |
| Severance tax | 312,742 | - | - | - | 314,247 | 9,392 | - | - | 344,561 | 11,875 | - | - | - | 371,582 | 1,364,398 |
| Health, safety, and environmental | 125,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 125,000 |
| Critical vendors | 125,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 125,000 |
| Franchise Tax | - | - | - | 34,000 | - | - | - | - | 34,000 | - | - | - | - | - | 68,000 |
| Other / misc. | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 6,010 | 84,136 |
| Total Operating Disbursements | 747,119 | 430,196 | 459,429 | 661,610 | 723,727 | 589,002 | 525,168 | 648,192 | 788,040 | 371,355 | 745,298 | 359,480 | 773,891 | 731,061 | 8,553,567 |
| *Capital Expenditure Disbursements* | | | | | | | | | | | | | | | |
| Capex | - | - | 154,500 | - | - | - | - | - | 59,606 | - | - | - | - | - | 214,106 |
| Total Capital Expenditure Disbursements | - | - | 154,500 | - | - | - | - | - | 59,606 | - | - | - | - | - | 214,106 |
| *Non-Oper / Restructuring Disbursements* | | | | | | | | | | | | | | | |
| Utility deposit | - | - | - | 10,000 | - | - | - | - | - | - | - | - | - | - | 10,000 |
| Debtor professional fees - legal | - | - | - | 100,000 | - | - | - | 200,000 | - | - | - | 200,000 | - | - | 500,000 |
| Debtor professional fees - consulting | - | - | - | 75,000 | - | - | - | 150,000 | - | - | - | 150,000 | - | - | 375,000 |
| Secured note holders and agent's professionals | - | - | - | 200,000 | - | - | - | 200,000 | - | - | - | 200,000 | - | - | 600,000 |
| UCC professional fees | - | - | - | - | - | - | - | 25,000 | - | - | - | 25,000 | - | - | 50,000 |
| U.S. Trustee | - | 20,000 | - | - | - | - | - | - | - | - | - | - | - | - | 20,000 |
| Noticing / claims agent | - | 30,000 | - | - | - | - | 30,000 | - | - | - | 30,000 | - | - | - | 90,000 |
| Independent board fees | - | - | 8,000 | - | - | - | - | 8,000 | - | - | 25,000 | 8,000 | - | - | 49,000 |
| Total Non-Oper / Restructuring | - | 50,000 | 8,000 | 385,000 | - | - | 30,000 | 583,000 | - | - | 55,000 | 583,000 | - | - | 1,694,000 |
| **Total Disbursements** | $ 1,407,400 | $ 480,196 | $ 621,929 | $ 1,046,610 | $ 1,010,270 | $ 1,013,505 | $ 555,168 | $ 1,231,192 | $ 1,168,276 | $ 819,914 | $ 800,298 | $ 942,480 | $ 773,891 | $ 1,531,693 | $ 13,402,821 |
| **Net Change in Cash** | $ 1,696,337 | $ (480,196) | $ (564,028) | $ (1,016,707) | $ 2,139,999 | $ (717,202) | $ (555,168) | $ (1,187,918) | $ 2,107,306 | $ (413,443) | $ (800,298) | $ (905,889) | $ (753,891) | $ 2,085,680 | $ 634,583 |
| **Ending Cash** | $ 5,349,771 | $ 4,869,576 | $ 4,305,548 | $ 3,288,840 | $ 5,428,839 | $ 4,711,637 | $ 4,156,469 | $ 2,968,552 | $ 5,075,858 | $ 4,662,415 | $ 3,862,116 | $ 2,956,228 | $ 2,202,337 | $ 4,288,017 | $ 4,288,017 |

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE | : | CASE NO. 15-50748 |
| | : | |
| HARVEST OIL & GAS, LLC, *ET AL*[1] | : | CHAPTER 11 |
| | : | |
| DEBTORS. | : | JOINTLY ADMINISTERED |

### PROPOSED CASH COLLATERAL ORDER

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed _____ (P-__) for the entry of interim orders and a final order authorizing it to, among other things (i) use Cash Collateral (as defined below) pursuant to section 363 of title 11 of the United States Code (as amended, the "Bankruptcy

---

[1] Saratoga Resources, Inc. (15-50749); The Harvest Group LLC (15-50750); LOBO Operating, Inc. (15-70751); and LOBO Resources, Inc. (15-50752) are being jointly administered with Harvest Oil & Gas, LLC (15-50748) pursuant to a court order [P-4] entered on June 19, 2015.

{00347319-2}

Code") and (ii) provide adequate protection pursuant to Bankruptcy Code sections 105(a), 361, 362, 363, and 507 and rules 2002, 4001, 6004(h), 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and providing the following relief in accordance with the terms of this Order:

## FINDINGS OF FACT:[2]

1.  <u>Petition Date</u>. On June 18, 2015 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division (the "Court") thereby commencing these cases (the "Chapter 11 Cases").

2.  <u>Debtors in Possession</u>. The Debtors are managing and operating their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  <u>Prepetition Loan Documents</u>. This Court approves of the form and manner of adequate protection being granted to the Prepetition Secured Parties (as hereinafter defined) who have been granted prepetition liens and security interests under the following documents (collectively, the "Prepetition Loan Documents"):

    (a)  That certain Indenture dated as of November 22, 2013 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "First Lien Indenture"), by and among Saratoga Resources, Inc., the

---

[2] Findings of Fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

NY\7094060.4{00347319-2}

Guarantors party to the First Lien Indenture (collectively, with Saratoga Resources, Inc., the "First Lien Credit Parties") and the Bank of New York Mellon Trust Company, N.A., as trustee (in such capacity, the "First Lien Trustee"), pursuant to which, among other things, the Debtors issued notes to certain holders (each a "First Lien Noteholder" and collectively, the "First Lien Noteholders").

(b)     That certain Indenture dated as of July 12, 2011 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Indenture"), by and among Saratoga Resources, Inc., the Guarantors party to the Second Lien Indenture (collectively, with Saratoga Resources, Inc., the "Second Lien Credit Parties") and Wilmington Savings Fund Society, FSB, successor to Bank of New York Mellon Trust Company, as trustee (in such capacity, the "Second Lien Trustee" and, together with the First Lien Trustee, the "Trustees"), pursuant to which, among other things, the Debtors issued notes to certain holders (each a "Second Lien Noteholder" and collectively, the "Second Lien Noteholders").     The First Lien Trustee, the First Lien Noteholders, the Second Lien Trustee, and the Second Lien Noteholders are collectively referred to herein as the "Prepetition Secured Parties."

(c)     That certain Security Agreement dated as of November 22, 2013 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "First Lien Security Agreement"), by and among Saratoga Resources, Inc., the Grantors party to the First Lien Security Agreement and the Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent.

(d)     That certain Security Agreement dated as of July 12, 2011 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Second Lien Security Agreement"), by and among Saratoga Resources, Inc., the Grantors party to the Second Lien Security Agreement and the Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent.

(e)     That certain Intercreditor Agreement dated as of November 22, 2013 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), by and among Saratoga Resources, Inc., the Guarantors party to the Intercreditor Agreement, the First Lien Trustee, and the Second Lien Trustee.

5.     The Forbearance Agreements:

(a)     Before the Petition Date, the First Lien Credit Parties and the First Lien Trustee, on January 30, 2015, entered into that certain Forbearance Agreement to First Lien Indenture (the "First Lien Indenture Forbearance Agreement") pursuant to which the First Lien Credit Parties acknowledged and agreed that (i) as of January 30, 2015, the aggregate principal balance of the outstanding obligations under the First Lien Indenture was $54,600,000, (ii) the interest, including default interest

3

accruing pursuant to section 2.12 of the First Lien Indenture, that was due and payable as of January 30, 2015 was $1,378,650, and (iii) the interest accrued that was not due and payable as of January 30, 2015 was an additional $455,000.

(b)     Before the Petition Date, the Second Lien Credit Parties and the Second Lien Trustee, on January 30, 2015, entered into that certain Forbearance Agreement to Second Lien Indenture (the "Second Lien Indenture Forbearance Agreement")(together, with the First Lien Indenture Forbearance Agreement, the "Forbearance Agreements") pursuant to which the Second Lien Credit Parties acknowledged and agreed that (i) as of January 30, 2015, the aggregate principal balance of the outstanding obligations under the Second Lien Indenture was $125,200,000, (ii) the interest, including default interest accruing pursuant to section 2.12 of the Second Lien Indenture, that was due and payable as of January 30, 2015 was $7,919,552.08, and (iii) the interest accrued that was not due and payable as of January 30, 2015 was an additional $1,304,166.67.

6.     Pursuant to the terms of the First Lien Indenture, First Lien Noteholders holding a majority in aggregate principal amount of the then outstanding Notes issued under the First Lien Indenture (collectively, the "Majority First Lien Noteholders") may direct the First Lien Trustee in its exercise of any trust or power. Pursuant to the terms of the Intercreditor Agreement, until the discharge of the First Lien Obligations (as defined below), the First Lien Trustee and the First Lien Noteholders have the exclusive right to exercise remedies with respect to the "Collateral" as defined in the Intercreditor Agreement and to make determinations regarding the release or disposition, or restrictions with respect to, the "Collateral" as defined in the Intercreditor Agreement, and the Second Lien Trustee, for itself and on behalf of the Second Lien Noteholders, waived any and all rights it or the Second Lien Noteholders may have as junior lien creditors or otherwise to object to the manner in which the First Lien Trustee and the First Lien Noteholders seek to enforce or collect the First Lien Obligations.

7.     <u>Prepetition Liens</u>. To secure the First Lien Obligations, in accordance with the Prepetition Loan Documents, each "Grantor," as defined in the First Lien Security Agreement, granted the First Lien Trustee, on behalf of the First Lien Noteholders,  valid, perfected,

4

enforceable and non-avoidable first priority security interests in and continuing liens (the "First Lien Prepetition Liens") which the Grantors have agreed are valid, perfected, enforceable and non-avoidable in the First Lien Forbearance Agreement and which shall be deemed valid, perfected, enforceable and non-avoidable upon entry of this Order (subject to applicable Challenge Period with respect to non-Debtor parties, if any), on all "Collateral," as defined in the First Lien Security Agreement, constitutes substantially all of each such Grantor's assets and properties (which, for the avoidance of doubt, includes all cash and Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, other than the "Excluded Assets," as defined in the First Lien Indenture (collectively, the "First Lien Prepetition Collateral"). To secure the Second Lien Obligations, in accordance with the Prepetition Loan Documents, each "Grantor," as defined in the Second Lien Security Agreement, granted the Second Lien Trustee, on behalf of the Second Lien Noteholders, valid, perfected, enforceable and non-avoidable second priority security interests in and continuing liens (the "Second Lien Prepetition Liens" and, together with the First Lien Prepetition Liens, the "Prepetition Liens") which the Grantors have agreed in the Second Lien Forbearance Agreement are valid, perfected, enforceable and non-avoidable and which shall be deemed valid, perfected, enforceable and non-avoidable upon entry of this Order (subject to applicable Challenge Period with respect to non-Debtor parties, if any), on all "Collateral," as defined in the Second Lien Security Agreement, which constitutes substantially all of each such Grantor's assets and properties (which, for the avoidance of doubt, includes all cash and Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, other than the "Excluded Assets," as defined in the Second Lien Indenture (collectively, the "Second Lien

NY\7094060.4{00347319-2}

Prepetition Collateral" and, together with the First Lien Prepetition Collateral, the "Prepetition Collateral").

8.     <u>Necessity of Relief Requested</u>.  The Debtors would not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course or to maintain their property without the use of Cash Collateral.   Without access to the Cash Collateral, the Debtors allege that their ability to manage, administer and preserve the Debtors' estates would be immediately and irreparably harmed, thereby materially impairing the estates and creditors, and the possibility for a successful reorganization in these Chapter 11 Cases. Accordingly, the relief requested in the Motion is, therefore, necessary, essential, and appropriate for the management and preservation of the Debtors' estates.   Entry of this Order is in the best interest of the Debtors, their estates, their creditors, and other parties in interest.

9.     <u>Notice</u>.  The Debtors served notice of the Hearing on this Motion to the parties set forth on the Affidavit of Service, dated _____ (P-__).   Under the circumstances, such notice provided to such parties is good and sufficient to permit the relief set forth in this Order, and no other or further notice of the relief sought at the Hearing and the relief granted herein is necessary or shall be required.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

10.     <u>Disposition</u>. The Motion is granted in accordance with the terms of this Order. Any objections to the Motion with respect to the Order that have not been withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied and overruled.

11.     <u>Debtors' Stipulations</u>.  Without prejudice to the rights of parties in interest solely to the extent set forth in Paragraph 12 below, the Debtors, on their own behalf and on behalf of

6

the estates, after consultation with their attorneys and financial advisors, acknowledge, admit, represent, stipulate, and agree (the "Debtors' Stipulations") that effective upon the entry of this Order:

(a) As of the Petition Date, the Debtors were liable to the First Lien Noteholders in respect of obligations under the First Lien Indenture for (i) aggregate principal amount of not less than [$54,600,000.00] on account of the Notes issued under the First Lien Indenture; (ii) accrued and unpaid interest in an aggregate amount of not less than [$2,614,248.00] on account of the Notes issued under the First Lien Indenture; and (iii) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law (collectively the "First Lien Obligations").

(b) As of the Petition Date, the Debtors were liable to the Second Lien Noteholders in respect of obligations under the Second Lien Indenture for (i) aggregate principal amount of not less than [$125,200,000.00] on account of the Notes issued under the Second Lien Indenture; (ii) accrued and unpaid interest in an aggregate amount of not less than [$16,099,527.53] on account of the Notes issued under the Second Lien Indenture; and (iii) unpaid fees, expenses, disbursements, indemnifications, obligations, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Prepetition Loan Documents or applicable law (collectively the "Second Lien Obligations").

(c) As of the Petition Date, the First Lien Obligations and the Second Lien Obligations are due and owing by the Debtor.

(d) As of the Petition Date, all claims in respect to the First Lien Obligations and the Second Lien Obligations (i) constitute legal, valid, binding and nonavoidable obligations of the Debtors and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

12. The Prepetition Liens (i) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Prepetition Collateral that are senior in priority over any and all other liens on the Prepetition Collateral, subject only to those liens explicitly permitted by the Prepetition Loan Documents (to the extent any such Permitted Liens were valid, properly perfected, nonavoidable liens senior in priority to Prepetition Liens on the Petition Date) (the

7

"Permitted Priority Liens"), if any; and (ii) are not subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulations, and (iii) are subject to and subordinate only to (a) the Carve-Out (as defined below) and (b) Permitted Priority Liens, if any. The Debtors' Stipulations shall be binding upon the Debtors in all circumstances upon the entry of this Order. The Debtors' Stipulation shall be binding upon each other party in interest, including any statutory committee appointed in these Chapter 11 Cases (the "Committee"), unless such Committee or such other party in interest (including any Chapter 11 trustee appointed) other than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such successor cases), *first*, commences, by the earlier of (x) with respect to any Committee, sixty (60) calendar days from the formation of any Committee, and (y) with respect to other parties in interest with requisite standing other than the Debtors or any Committee, seventy-five (75) calendar days following the date of entry of this Order (such time period established by the earlier of clauses (x) and (y), as the same may be extended in accordance with this Paragraph 12, shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, or findings, included in the Debtors' Stipulations or the releases included in this

8

Order, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition Secured Parties in connection with or related to the First Lien Obligations or the Second Lien Obligations, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the First Lien Obligations, the Second Lien Obligations or otherwise, including, without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a setoff, counterclaim, or defense to the First Lien Obligations or the Second Lien Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (clauses (A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.  If a Chapter 7 trustee or a Chapter 11 trustee is appointed during the Challenge Period, the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any successor cases, (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (iii) each of the First Lien Obligations and the Second Lien Obligations shall be deemed to be a fully allowed secured claim within the meaning of section 506 of the Bankruptcy Code and (iv) the Debtors'

NY\7094060.4{00347319-2}

Stipulations and the release provisions set forth in this Order shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted in any such adversary proceeding, contested matter or other action or proceeding, the provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest except to the extent that such provisions were expressly challenged in such adversary proceeding, contested matter, or other action by such Committee or other party in interest. The Challenge Period may only be extended with the written consent of the Majority First Lien Noteholders in their sole discretion or by order of the Court, after notice and hearing at which all parties in interest have an opportunity to be heard. Notwithstanding any provision to the contrary herein, nothing in this Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates. The Debtors shall not transfer any claims owned by the Debtors or their estates to any Committee or other party in interest or consent to standing for any Committee or other party in interest to bring claims of the Debtors or their estates. The failure of any party in interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 12.

13.    _Cash Collateral_.  For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined in Bankruptcy Code Section 363, in which the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, has a lien, security interest or other interest (including,

10

NY\7094060.4{00347319-2}

without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to this Order, or otherwise.

14.     <u>Sections 506(c) and 552(b).</u>   In light of the agreement of the Prepetition Secured Parties to subordinate their liens and claims to the Carve-Out, to permit the use of the Prepetition Collateral and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Order, the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, are each entitled to (a) a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b); (b) a waiver of the provisions of Bankruptcy Code section 506(c) related to the period of time from the Petition Date to the Termination Date (as defined herein); and (c) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral (as defined herein) or the Prepetition Collateral.

15.     <u>Approved Budget.</u>   The Debtors are authorized to use Cash Collateral in which the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, may have an interest, in accordance with the terms, conditions, and limitations set forth in this Order and the Approved Budget (including any Permitted Variances (as defined below)).   Any dispute in connection with the use of Cash Collateral shall be heard by this Court.

16.     <u>Supplemental Approved Budget.</u>

(a)     In the event the Debtors and the Majority First Lien Noteholders fail to agree on a supplemental budget for a possible extension of the effect of this Order and the consensual use of Cash Collateral beyond the Termination Date as set forth in this Order, the Debtors' right to use Cash Collateral shall terminate without prejudice to the rights of the Debtors to seek the non-consensual use of Cash Collateral and any objections thereto.

NY\7094060.4{00347319-2}

(b)     The Prepetition Secured Parties shall have no obligation with respect to the Debtors' use of the Collateral (as defined herein), Prepetition Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Approved Budget or to pay (directly or indirectly from their Cash Collateral or Prepetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget. Cash Collateral used under this Order shall only be used by the Debtors in accordance with Approved Budget and this Order. Subject to the Carve-Out, the consent of the Majority First Lien Noteholders to the Approved Budget shall not be construed as a consent to the use of any Cash Collateral beyond the Termination Date except as set forth in Paragraph 19 below.

17.     <u>Permitted Variance</u>.  Notwithstanding the Approved Budget, so long as the Termination Date has not occurred, the Debtors shall be authorized to use Cash Collateral with respect to the Approved Budget as follows:

(a)     With respect to the line item "Workover" on the Approved Budget ("Workover Cash Collateral"), in an amount that would not cause the Debtors to use Cash Collateral in an amount greater than 110% of the Approved Budget with respect to such line item measured on a four-week rolling basis (the "Workover Permitted Variance"),

(b)     With respect to the line item "Capex" on the Approved Budget ("Capex Cash Collateral"), in an amount that would not cause the Debtors to use Cash Collateral in an amount greater than 110% of the Approved Budget with respect to such line item measured on a four-week rolling basis (the "Capex Permitted Variance"),

(c)     With respect to all other items in the Approved Budget, excluding Workover Cash Collateral and Capex Cash Collateral as well as such fees and expenses for professionals engaged by the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, ("Aggregate Cash Collateral") in an amount that would not cause the Debtors to use Aggregate Cash Collateral in an amount greater than 110% of the Approved Budget in the aggregate on a four-week rolling basis (the "Aggregate Permitted Variance,")(together with the Workover Permitted Variance and the Capex Permitted Variance, the "Permitted Variances") For the avoidance of doubt, notwithstanding anything to the contrary in this Order, (1) the reasonable professional fees, disbursements, costs, and expenses of the advisors of the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, shall be due, payable, and paid in accordance with the terms of this Order notwithstanding any budgeted amounts for such fees, disbursements, costs, and expenses set forth in the Approved Budget, and (2) the fees and expenses of the professionals for the

12

Debtors and the Committee, if any, in the Approved Budget shall not be deemed a cap or limitation on any fees and expenses of such professionals, provided however that fees and expenses of any professionals identified in the Approved Budget which exceed the amounts provided in the Approved Budget are not included in the Carve Out.

(d)     If the aggregate amount of Aggregate Cash Collateral actually used by the Debtors, measured on a four-week rolling basis, is less than the aggregate amount of Aggregate Cash Collateral available for use by the Debtors in the Approved Budget during such period (and excluding any amounts (i) paid for professional fees, disbursements, costs, and expenses of the advisors of the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders which exceed the budgeted amounts therefor, (ii) paid for and budgeted for Workover Cash Collateral and (iii) paid for and budgeted for Capex Cash Collateral), then the Debtors may use any such unused amounts in any other periods in the Approved Budget, provided, however, that in no event shall the Debtors use Aggregate Cash Collateral in an amount greater than 110% of the Approved Budget on a four-week rolling basis.

(e)     If the aggregate amount of Workover Cash Collateral actually used by the Debtors measured on a four-week rolling basis, is less than the aggregate amount of Workover Cash Collateral available for use by the Debtors then the Debtors may use any such unused amounts only for "Workovers" in any other period in the Approved Budget, provided, however, that in no event shall the Debtors used Workover Cash Collateral in an amount greater than 110% of the Approved Budget on a four-week rolling basis.

(f)     If the aggregate amount of Capex Cash Collateral actually used by the Debtors measured on a four-week rolling basis, is less than the aggregate amount of Capex Cash Collateral available for use by the Debtors, then the Debtors may use any such unused amounts only for "Capex" in any other period in the Approved Budget, provided, however, that in no event shall the Debtors used Capex Cash Collateral in an amount greater than 110% of the Approved Budget on a four-week rolling basis.

(g)     Notwithstanding any other provision of this Order to the contrary, the Debtors shall not use Cash Collateral to pay any bonus or severance to any employee, manager, officer, director or Affiliate thereof of the Debtors, and the Debtors shall not permit any raises for any employees without the written consent of the Majority First Lien Noteholders.

18.     <u>Termination of Cash Collateral Usage</u>.  A termination event under this Order shall occur upon the occurrence of any of the following (each a "Termination Event"):

NY\7094060.4{00347319-2}

(i)     September 25, 2015, unless extended by the Majority First Lien Noteholders, in their sole discretion;

(ii)    Upon the expiration of the term of the Approved Budget, unless a supplemental approved budget has been agreed upon by the Debtors and the Majority First Lien Noteholders, in their sole discretion;

(iii)   Five (5) business days after the date the Majority First Lien Noteholders provide the Debtors with written notice of the Debtors' failure to comply with any of the terms or conditions of this Order (which notice shall be filed in the record of the Bankruptcy Cases), and the Debtors' failure to cure any such noncompliance prior to the date that is five (5) business days after the filing of such notice;

(iv)    The date an application, motion or other pleading is filed by the Debtors seeking to amend, modify, supplement, or extend this Order without prior written consent of the Majority First Lien Noteholders;

(v)     The date any material provision of the Order shall for any reason cease to be valid and binding on the Debtors or the Debtors shall so assert in any pleading filed in any court;

(vi)    The date an application is filed by the Debtors for the approval of any superpriority claim or any lien in the Chapter 11 Cases which is pari passu with or senior to the Adequate Protection Liens (as defined herein), Superpriority Claims (as defined herein), or Prepetition Liens without the prior written consent of the Majority First Lien Noteholders;

(vii)   The date an application, motion or other pleading is filed by the Debtors seeking approval of any debtor-in-possession financing without the prior written consent of the Majority First Lien Noteholders;

(viii)  Unless otherwise agreed in writing by the Majority First Lien Noteholders, the filing of any plan of reorganization by the Debtors, or supported by the Debtors;

(ix)    Unless otherwise agreed in writing by the Majority First Lien Noteholders, the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors;

(x)     The date that the Debtors disband the independent restructuring committee (the "IRC") of the board of Saratoga Resources, Inc. with the authority in effect as of June 15, 2014 or otherwise as acceptable to the Majority First Lien Noteholders;

(xi)    The date that Richard Nevins or William Rhea, or replacements acceptable to the Majority First Lien Noteholders, are no longer employed by the

14

Debtors as independent directors of the board of Saratoga Resources, Inc. and members of the IRC on terms in effect as of June 15, 2014 or otherwise as acceptable to the Majority First Lien Noteholders;

(xii)   The date that John Young, or a replacement acceptable to the Majority First Lien Noteholders, is no longer employed by the Debtors as strategic alternatives officer on terms in effect as of June 15, 2015 or otherwise as acceptable to the Majority First Lien Noteholders;

(xiii)  The date that Conway MacKenzie, or a replacement acceptable to the Majority First Lien Noteholders, is no longer employed by the Debtors as financial advisor on the same terms and conditions with the same responsibilities in effect as of June 15, 2015 or otherwise as acceptable to the Majority First Lien Noteholders;

(xiv)   The date of entry of an order granting relief from the automatic stay to the holder or holders of any security interest, other than the Prepetition Secured Parties, to permit foreclosure on any asset of the Debtors with a value in excess of $10,000;

(xv)    The date of the appointment of a Chapter 11 Trustee;

(xvi)   The date the Chapter 11 Cases shall be dismissed or converted to cases under chapter 7 of the Bankruptcy Code;

(xvii)  The date of the commencement of any action by the Debtors against either of the Trustees or any of the First Lien Noteholders or the Second Lien Noteholders with respect to the First Lien Obligations, the Second Lien Obligations, or the Prepetition Liens; and

(xviii) If the Debtors have not obtained a final Order by July 21, 2015, or such other date agreed to by the Majority First Lien Noteholders, in their sole discretion.

19.    Immediately upon the occurrence of a Termination Event, the First Lien Trustee, at the direction of the Majority First Lien Noteholders, may declare a termination, reduction, or restriction of the ability of the Debtors to use Cash Collateral, except for (i)  funds shown on the Approved Budget which have not yet been expended may be expended for the purposes set forth in the Approved Budget during the Remedies Notice Period after the Termination Date and (ii) the limited use of Cash Collateral during the Remedies Notice Period (as defined below) to pay

15

payroll, related payroll taxes, and critical expenses as determined by the Debtors (any such declaration shall be referred to as a "Termination Declaration"). The Termination Declaration shall be given by email to counsel for the Debtors and the U.S. Trustee and shall be filed with the Court (the earliest date any such Termination Declaration is made shall be referred to as the "Termination Date"). The First Lien Trustee, at the direction of the Majority First Lien Noteholders, may waive the occurrence of a Termination Event. During the five (5) business days immediately after the Termination Declaration Date (the "Remedies Notice Period"), the Debtors shall only be authorized to pay (i) payroll, related payroll taxes, and critical expenses as determined by the Debtors and as set forth on the Approved Budget and (ii) funds shown on the Approved Budget which have not yet been expended may be expended for the purposes set forth in the Approved Budget after the Termination Date. During the Remedies Notice Period, the Debtors, the First Lien Trustee on behalf of the First Lien Noteholders, and any Committee shall be entitled to an emergency hearing before the Court for the purpose of contesting whether a Termination Event has occurred and/or seeking the non-consensual use of Cash Collateral subject to the Carve Out. Unless during such Remedies Notice Period (or such additional period established by the Court) the Court determines that a Termination Event has not occurred and/or is not continuing, or grants authority for the continued use of Cash Collateral by the Debtors, the Debtors shall no longer have the right to use such non-consensual Cash Collateral (other than the Carve-Out) and the automatic stay under section 362 of the Bankruptcy Code, as to the Prepetition Secured Parties, shall automatically terminate at the end of the Remedies Notice Period, without further notice or order. For the avoidance of doubt, upon the automatic termination of the automatic stay at the end of the Remedies Notice Period, the First Lien Trustee, on behalf of the First Lien Noteholders, shall be deemed to have relief from the

16

NY\7094060.4{00347319-2}

automatic stay in order to exercise all of its rights and remedies under this Order, the Prepetition

Loan Documents, or applicable law, as the case may be. Notwithstanding anything herein or the

occurrence of the Termination Date, all of the rights, remedies, benefits, and protections

provided to the Trustees on behalf of the First Lien Noteholders and the Second Lien

Noteholders under this Order shall survive the Termination Date.

20.     <u>Restriction on the Use of Cash Collateral</u>.

(a)     From the date hereof through the Termination Date, the Cash Collateral, and all proceeds of the Prepetition Collateral, including, without limitation, all of the existing or future Cash Collateral, shall not, directly or indirectly, be used for any payments, expenses or disbursements except for (i) those payments, expenses and/or disbursement that are expressly permitted under this Order or other order entered by this Court (entered pursuant to motions and orders which shall be acceptable to the Majority First Lien Noteholders) and in all cases which are consistent with the Approved Budget; (ii) compensation and reimbursement of fees, disbursements, costs, and expenses incurred in accordance with the Approved Budget during the term of this Order and payable pursuant to Order of the Court or Bankruptcy Code sections 330 and 331 to professionals or professional firms retained by the Debtors pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503 (the "Debtor Professionals") and permitted or awarded pursuant to an order of this Court; (iii) the payment of reasonable fees, disbursements, costs, and expenses of the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, as provided for herein, including, but not limited to, the reasonable fees, disbursements, costs, and expenses of the Noteholder Professionals (as defined herein); and (iv) the payment of reasonable fees, disbursements, costs, and expenses of the Majority First Lien Noteholders, as provided for herein, including, but not limited to, the reasonable fees, disbursements, costs, and expenses of the Majority First Lien Noteholder Professionals (as defined herein); provided, however, that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clause (ii) and shall not affect the right of any party in interest to object to the allowance and payments of any such amounts.

(b)     Subject to the Carve-Out, no administrative expense claims, including fees, disbursements, costs, and expenses of professionals, shall be charged or assessed against or recovered from the Prepetition Collateral or Collateral or attributed to the Prepetition Secured Parties with respect to their respective interests in the Prepetition Collateral or Collateral pursuant to the provisions of Bankruptcy Code section 506(c) or otherwise by, though, or on behalf of the Debtors, without the prior written consent of the Majority First Lien Noteholders, and no such consent

17

shall be implied from any action, inaction or acquiescence by, either with or without notice to, the Majority First Lien Noteholders related to the period of time from the Petition Date through the Termination Date. Except as set forth herein, the Majority First Lien Noteholders have not consented or agreed to the additional use of the Prepetition Collateral or the Collateral and nothing contained herein shall be deemed a consent by the Majority First Lien Noteholders to any charge, lien, assessment or claim against the Prepetition Collateral or the Collateral. The Prepetition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral.

(c)     No Cash Collateral, Prepetition Collateral or proceeds thereof, or any portion of the Carve-Out may be used directly or indirectly by the Debtors, or any other person, party or entity to (i) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Obligations including the liens with respect thereto or any action purporting to do any of the foregoing, provided, however, that the Committee may use an amount not to exceed $25,000.00 to investigate (but not prosecute) any and all of the foregoing so long as such investigation occurs within the Challenge Period; (ii) assert or prosecute any claims and defenses against the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors or any action purporting to do the foregoing; (iii) except as otherwise expressly provided herein including in any plan of reorganization, prevent, hinder, or otherwise delay the Prepetition Secured Parties' assertion, enforcement, or realization on the Obligations, Cash Collateral, the Prepetition Liens, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with the Final Order; (iv) seek to modify any of the rights granted to the Prepetition Secured Parties hereunder; (v) apply to the Court for authority to approve superpriority claims or grant liens in the Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens, Superpriority Claims or Prepetition Liens, unless all Obligations under the Prepetition Loan Documents have been refinanced or paid in full in cash or otherwise agreed to in writing by the First Lien Trustee at the direction of the Majority First Lien Noteholders in their sole discretion; (vi) prepare, file or support any plan of reorganization that does not provide the Prepetition Secured Parties with the right to credit bid to the extent provided by the Bankruptcy Code, or (vii) except through a plan of reorganization, seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Majority First Lien Noteholders or provided for by the Approved Budget.

(d)     The Debtors shall use property not constituting Cash Collateral prior to using any Cash Collateral for the payment of expenses, utility deposits, and for other such payments authorized to be made by the Debtors consistent with the Bankruptcy Code.

18

21.  <u>Adequate Protection</u>. The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361 and 363(c) and (e), to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, equal to the aggregate diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral (the "Adequate Protection Obligations").  As such, (i) the First Lien Trustee, for the benefit of itself and the First Lien Noteholders, is entitled to receive adequate protection to the extent of any diminution in value of their interest in the First Lien Prepetition Collateral (including the Cash Collateral) and (i) the Second Lien Trustee, for the benefit of itself and the Second Lien Noteholders, is entitled to receive adequate protection to the extent of any diminution in value of their interest in the Second Lien Prepetition Collateral (including Cash Collateral), in each case resulting from the use of Cash Collateral, the use, sale or lease of Prepetition Collateral, the subordination of the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims to the Carve-Out, as described herein, or the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to Bankruptcy Code sections 361, 362 and 363. Accordingly, the Prepetition Secured Parties are hereby provided with the following forms of adequate protection:

(a)    Fees and Expenses. The Debtors are authorized and directed to pay when due and payable and without regard to whether such fees, disbursements, costs, and expenses were incurred prepetition or postpetition, and without regard to whether such fees, disbursements, costs, and expenses are set forth on the Approved Budget, the reasonable and documented fees, disbursements, costs, and expenses incurred by (i) the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders, and such professionals and/or consultants retained by the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders (collectively, the "Noteholder Professionals"), in each case including, without limitation, in connection with protecting the rights and interests of the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders in connection with the Chapter 11 Cases, provided that if the payment of such aggregate reasonable fees, disbursements, costs, and expenses of the Noteholder Professionals causes the

NY\7094060.4{00347319-2}

Debtors' expenditures to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event, and (ii) the Majority First Lien Noteholders, and such professionals and/or consultants retained by the Majority First Lien Noteholders, including Latham & Watkins LLP and Jones Walker LLP (collectively, the "Majority First Lien Noteholder Professionals"), provided that if the payment of such aggregate reasonable fees, disbursements, costs, and expenses of the Majority First Lien Noteholder Professionals causes the Debtors' expenditures to exceed amounts permitted by the Approved Budget, such excess payments shall not constitute a Termination Event. In each case, payment shall be due from the Debtors upon ten (10) calendar days of receipt of a reasonably detailed, line-item invoice, redacted for privilege, with copies provided contemporaneously to counsel for the Debtors, the Committee, and the U.S. Trustee. The Debtors are authorized and directed to pay all fees, disbursements, costs, and expenses in accordance with the terms of this Order, without the First Lien Trustee, on behalf of the First Lien Noteholders, the Second Lien Trustee, on behalf of the Second Lien Noteholders, or the Majority First Lien Noteholders having to file any further application with this Court for approval or payment of such fees, disbursements, costs, and expenses (except as may be required in accordance with the Local Rules of the Bankruptcy Court). All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(b) Adequate Protection Liens and Adequate Protection Superpriority Claim for Prepetition Secured Parties. Subject and subordinate to the Carve-Out, the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders, are hereby granted: (i) valid, enforceable, nonavoidable and fully perfected, first-priority postpetition security interests in and liens (deemed effective and perfected upon the date of entry of the Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) (the "Adequate Protection Liens") on all of the Collateral solely to provide adequate protection for the Diminution in Value, if any, and only in the proven amount of same, of the Prepetition Secured Parties' interest in Cash Collateral, as measured from the Petition Date through the Termination Date; and (ii) first priority superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "Superpriority Claim") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552 (subject to entry of a Final Order), 726 (to the extent permitted by law), 1113 and 1114, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent cases or proceedings under the Bankruptcy Code that may result therefrom, to secure in each case an amount equal to the aggregate

20

Diminution in Value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) in the interests of the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders in the Cash Collateral as measured from the Petition Date through the Termination Date; including, without limitation, any such diminution in value resulting from, and so long as in accordance with applicable law (a) depreciation, physical deterioration, use, loss, sale or decline in market value of the Prepetition Collateral; (b) the Carve-Out; or (c) imposition of the automatic stay under section 362 of the Bankruptcy Code or otherwise. For purposes of this Order, the term "Collateral" shall include, without limitation, any and all prepetition and postpetition property, assets and interests in property and assets of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases), and all "property of the estates" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or successor cases), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, whether existing prior to the Petition Date or arising after the Petition Date, including, without limitation, all accounts, inventory, contracts, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, licenses, general intangibles, payment intangibles, machinery and equipment, real property (including all facilities), capital stock of each subsidiary of the Debtors, deposit accounts, commercial tort claims and other causes of action, Cash Collateral and all proceeds of any of the collateral described above; excluding however, all proceeds of avoidance actions under Chapter 5 of the Bankruptcy Code. The Prepetition Liens, Adequate Protection Liens and Superpriority Claims shall be subject and subordinate only to: (i) the Permitted Priority Liens and (ii) payment of the Carve-Out in accordance with the terms and conditions set forth in this Order. Except for the Carve Out, nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the First Lien Trustee on behalf of the First Lien Noteholders and the Second Lien Trustee on behalf of the Second Lien Noteholders hereunder is insufficient to compensate for any Diminution in Value of their interests in the Cash Collateral during the Chapter 11 Cases or any successor cases.

22.  <u>Reporting Obligations</u>. The Debtors shall timely file monthly operating reports and shall provide such financial and other reporting information and access as may be reasonably requested by the Majority First Lien Noteholders, including, without limitation, (i) current cash balance, working capital reports (including ageing of any accounts, all current assets and liabilities, and any other liabilities that are reasonably expected to come due within one year),

21

NY\7094060.4{00347319-2}

15-50748 - #19   File 06/19/15   Enter 06/19/15 17:36:30   Main Document      Pg 42 of 52

and monthly cash flow forecasts, (ii) updated reserve information, (iii) an update on insurance coverage and any outstanding payment obligations or liabilities that are related to insurance, (iv) an update on plugging and abandonment liabilities, bonding requirements and other regulatory matters, and (v) any proposals by the Debtors to other parties with respect to sales of the Debtors' assets or any plan of reorganization, provided that such information shall be "Confidential Information" under that certain Confidentiality Agreement by and among the Majority First Lien Noteholders and the Debtors, dated February 5, 2015. Nothing herein shall be construed to require the disclosure of information protected by the attorney-client privilege or the attorney work product doctrine.

23. <u>Carve-Out</u>.

(a)     As used in this Order, "Carve-Out" means (A) any and all expenditures authorized or made pursuant to an Approved Budget , whether or not paid: (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6), (ii) the reasonable unpaid fees, disbursements, costs, and expenses incurred by the Debtor Professionals prior to the Termination Date and in accordance with the Approved Budget, to the extent allowed by the Bankruptcy Court, whether by interim order, procedural order or otherwise, (iii) the reasonable unpaid fees, disbursements, costs, and expenses incurred prior to the Termination Date and in accordance with the Approved Budget of professionals retained by the Committee (the "Committee Professionals") and all reasonable unpaid out-of-pocket expenses of the members of the Committee, in each case to the extent allowed by the Bankruptcy Court, whether by interim order, procedural order or otherwise and (iv) after the expiration of the Remedies Notice Period, the sum of $200,000, less the sum of any retainer held by such professional, for fees, disbursements, costs, and expenses incurred by the Debtor Professionals and the sum of $25,000, less the sum of any retainer held by such professional, for fees, disbursements, costs, and expenses thereafter incurred by the Committee Professionals, if any. The preceding clauses (i)-(iv) are each subject to the rights of any party in interest to object to the allowance of any such fees, disbursements, costs, and expenses. For the avoidance of doubt, and without limiting the foregoing, (A) the Debtors are authorized, subject to applicable court orders, to pay any fee, disbursement, cost, or expense that falls within the Carve-Out; and (B) Cash Collateral may be used for (1) payment of fees, disbursements, costs, and expenses of the Debtor Professionals or the Committee Professionals (or any out-of-pocket expenses of any member of the Committee), as allowed and

22

payable, whether by interim order, procedural order or otherwise, or under Bankruptcy Code sections 330 and 331, and (2) payments otherwise agreed to by the Majority First Lien Noteholders, provided, however, that in each case such payments shall be in accordance with the Approved Budget or otherwise in accordance with this Order.

(b)     No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to or pari passu with that of the Prepetition Liens, the Superpriority Claims or Adequate Protection Liens granted by this Order, shall be granted while any portion of the Diminution of Value remain outstanding or in effect without the prior written consent of the Majority First Lien Noteholders.

24.     <u>Release</u>.  Without prejudice to the rights of parties in interest solely to the extent set forth in Paragraph 12 above, effective the entry of this Order, the Debtors and their estates (including any successor trustee or other estate representative in the Chapter 11 Cases or any successor cases) and any party acting by, through, or under the Debtors or their estates, forever and irrevocably (i) release, discharge, waive, and acquit the First Lien Trustee, on behalf of the First Lien Noteholders, the Second Lien Trustee, on behalf of the Second Lien Noteholders, the First Lien Noteholders, and the Second Lien Noteholders, and their respective participants and each of their respective affiliates, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Released Parties") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations existing as of the Petition Date, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, with respect to or relating to the Obligations, the Prepetition Liens, the Prepetition Loan Documents, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, subject to Permitted Priority Liens), perfection or avoidability of the liens

23

or secured claims of the Prepetition Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority (subject to Permitted Priority Liens), enforceability and nonavoidability of the Obligations and the Prepetition Liens. Notwithstanding anything in this Paragraph 24 or otherwise in this Order to the contrary, the Debtors and their estates (including any successor trustee or other estate representative in the Chapter 11 Cases or any successor cases) and any party acting by, through, or under the Debtors or their estates, and any other parties in interest, do not release, discharge, waive, and acquit in any manner whatsoever (i) any claim, motion, adversary proceeding, cause of action, demand or right to seek a valuation of the Prepetition Collateral or the Collateral under title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure; or (ii) any claim, motion, adversary proceeding, cause of action, demand or right as to whether the First Lien Obligations or the Second Lien Obligations are fully secured claims, unsecured claims or undersecured claims based upon valuation of the Prepetition Collateral or the Collateral under title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure; or (iii) subject to the Challenge Period set forth in Paragraph 12, in the event that a final order is entered determining that all or any part of the First Lien Obligations or the Second Lien Obligations are unsecured or undersecured, the right of a party with standing to pursue an action pursuant to Bankruptcy Code Section 547, and the right of the Prepetition Secured Parties to defend any such proceeding. Furthermore, notwithstanding anything in this Paragraph 24 or otherwise in this Order to the contrary, nothing contained herein shall constitute a release of any claim or causes of actions not held by the Debtors, or the estates, but rather held individually (though not derivatively) by parties in interest.

      25. <u>Additional Perfection Measures</u>.

NY\7094060.4{00347319-2}

(a)     Pursuant to this Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities shall, pursuant to this Final Order be, and they hereby are deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the Uniform Commercial Code as in effect as of the date hereof or similar applicable laws in favor of the Prepetition Secured Parties).

(b)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the First Lien Trustee, on behalf of the First Lien Noteholders and the Second Lien Trustee, on behalf of the Second Lien Noteholders, may, but shall not be obligated to, file a true and complete copy of this Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Order.

(c)     The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Order and the Prepetition Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and to incur all liabilities and obligations to the Prepetition Secured Parties under the Prepetition Loan Documents and this Order, (ii) authorize the Prepetition Secured Parties to retain and apply payments made in accordance with this Order, and (iii) otherwise to the extent necessary to implement and effectuate the provisions of this Order.

26.     Proofs of Claim.  The Trustees, the First Lien Noteholders, and the Second Lien Noteholders shall not be required to file proofs of claim in the Chapter 11 Cases or any subsequent cases under the Bankruptcy Code for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute timely filed proofs of claim for each of the First Lien Noteholders and the Second Lien Noteholders.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Chapter 11 Cases, or any subsequent cases under the Bankruptcy Code, to the contrary, the First Lien Trustee, for the benefit of itself and

NY\7094060.4{00347319-2}

the First Lien Noteholders, and the Second Lien Trustee, for the benefit of itself and the Second Lien Noteholders, are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Cases or any subsequent cases under the Bankruptcy Code for any claim allowed herein.

27.     <u>Binding Nature of Agreement</u>.   Except with respect to a sale of the Debtors' assets approved by the Majority First Lien Noteholders, the rights, remedies, powers, privileges, liens, and priorities of the Prepetition Secured Parties under this Order shall not be modified, altered or impaired in any manner by any subsequent Cash Collateral Order or by the dismissal or conversion of the Chapter 11 Cases or in any subsequent cases under the Bankruptcy Code. Except as otherwise provided herein, and without prejudice to the Debtors' rights to seek non-consensual use of Cash Collateral upon any Termination Date, the Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Order without the prior written consent of the Majority First Lien Noteholders, and no such consent shall be implied by any other action, inaction, or acquiescence of any of the Trustees or the Prepetition Secured Parties.  In the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash whether previously or hereunder, or lien, claim, or priority authorized or created hereby.

28.     <u>Priorities Among Prepetition Secured Parties</u>. Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and

26

rights of the Prepetition Secured Parties with respect to the adequate protection granted hereunder), such relative priorities and rights shall continue to be governed by the Prepetition Loan Documents (including, without limitation, the Intercreditor Agreement), to the extent otherwise applicable.

29.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (i) the rights of the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, to seek any other or supplemental relief in respect of the Trustees, including the right to seek additional adequate protection ( or any defenses thereto) or (ii) any of the rights of the First Lien Trustee, on behalf of the First Lien Noteholders, and the Second Lien Trustee, on behalf of the Second Lien Noteholders, under the Bankruptcy Code or under applicable nonbankruptcy law (or any defenses thereto). Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the First Lien Trustee, on behalf of the First Lien Noteholders, or the Second Lien Trustee, on behalf of the Second Lien Noteholders, that the adequate protection granted herein does in fact adequately protect the Trustee on behalf of the First Lien Noteholders and the Second Lien Noteholders against any Diminution in Value of their interests in the Prepetition Collateral.

30.    <u>No Waiver by Failure to Seek Relief</u>. The delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Order, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder or thereunder, or otherwise of the Prepetition Secured Parties.

NY\7094060.4{00347319-2}

31.     <u>No Third-Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

32.     <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded to the Prepetition Secured Parties under this Order, and any actions taken pursuant thereto, shall survive, and shall not be modified, impaired, or discharged by, the entry of an order (i) confirming any plan of reorganization in the Chapter 11 Cases, (ii) dismissing the Chapter 11 Cases, (iii) converting the Chapter 11 Cases into cases under Chapter 7 of the Bankruptcy Code, (iv) withdrawing of the reference of the Chapter 11 Cases or any successor cases, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court and (b) the Adequate Protection Liens and the Superpriority Claims shall continue in the Chapter 11 Cases, in any such successor cases or after any such dismissal. Except as otherwise provided herein, the Adequate Protection Liens and the Superpriority Claims shall maintain their priorities as provided in this Order and the Final Order, and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of the Chapter 11 Cases into cases pursuant to Chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Cases, or by any other act or omission until such time as the First Lien Obligations and the Second Lien Obligations are indefeasibly paid in full in cash or receive treatment as otherwise agreed to by the Prepetition Secured Parties.   For the avoidance of doubt, the First Lien Obligations and the Second Lien Obligations may be treated as provided in a plan of reorganization to the extent permitted by the Bankruptcy Code.

33.     <u>Entry of Final Order; Effect</u>. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully

28

enforceable nunc pro tunc to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(h), 7062, 9014, 9024 or otherwise, or Rule 62(a) of the Federal Rules of Civil Procedure, and the Clerk of this Court is hereby directed to enter this Order on this Court's docket in the Chapter 11 Cases.

34. <u>Headings</u>. Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Order.

35. <u>General Cooperation from Debtors; Access to Information</u>. Without limiting any of the Debtors' other obligations in this Order or the Prepetition Loan Documents, the Debtors shall, and shall cause their senior officers, directors, and financial advisors to, reasonably cooperate with the Trustees, the First Lien Noteholders, and the Second Lien Noteholders and each of their respective advisors and representatives, in furnishing documents and information as and when reasonably requested by such parties regarding the Collateral or the Debtors' financial affairs, finances, financial condition, business, and operations. Notwithstanding anything to the contrary contained herein, the Debtors do not waive any rights to attorney-client, work product, or similar privilege, and the Debtors shall not be required to provide the Trustees, the First Lien Noteholders, or the Second Lien Noteholders, or their respective financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.

36. <u>Debtors' Filing of a Plan</u>. For the avoidance of doubt, this Order shall not prejudice the Debtors' rights under the Bankruptcy Code to file and seek to confirm a plan of reorganization; provided that the foregoing does not modify the terms of this Order with respect to Termination Events.

37. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order.

NY\7094060.4{00347319-2}

38.    <u>Binding Effect of Order; Successors and Assigns</u>. Subject to Paragraph 12 above, the terms of this Order, including all findings herein, shall be binding on all parties in interest in these Chapter 11 Cases, including, without limitation, any Committee, the Debtors, the Prepetition Secured Parties and each of their respective successors and assigns, and any trustee, responsible officer, estate administrator or representative, or similar person appointed in any cases for the Debtors under any chapter of the Bankruptcy Code.  The terms of this Order shall inure to the benefit of the Debtors, the Prepetition Secured Parties and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in any cases for the Debtors under any chapter of the Bankruptcy Code.

###

This order was prepared and is being submitted by:

NY\7094060.4{00347319-2}

/s/
William H. Patrick, III (La. Bar No. 10359)
Tristan E. Manthey, (La. Bar No. 24539)
Cherie Dessauer Nobles, (La. Bar No. 30476)
**Heller, Draper, Patrick, Horn & Dabney, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana  70130-6175
Telephone:  504-299-3300 // Fax:  504-299-3399
**Proposed Co-Counsel for Debtors**


/s/
Louis Phillips (La. Bar No. _____)
**Gordon, Arata, McCollam, Duplantis &
Eagan, LLC**
301 Main Street, Suite 1600
Baton Rouge, Louisiana  70801-1916
Telephone:  225-381-9643
Direct Phone:  225-338-5308
Facsimile:  225-336-9763
**Proposed Co-Counsel for Debtors**


**AND**


/s/
R. Patrick Vance (La. Bar No. 13008)
Mark A. Mintz (La. Bar No. 31878)
**Jones Walker LLP**
201 St. Charles Ave., 49th Floor
New Orleans, Louisiana  70170
Telephone:     504-582-8368
Facsimile:     504-589-8368
Email:         pvance@joneswalker.com
Email:         mmintz@joneswalker.com


/s/
D.J. (Jan) Baker (Pro Hac Vice Pending)
Adam J. Goldberg (Pro Hac Vice Pending)
**Latham & Watkins LLP**
885 Third Avenue
New York, New York 10022
Telephone:     212-906-1828
Facsimile:     212-751-4864
Email:         dj.baker@lw.com
Email:         adam.goldberg@lw.com
**Counsel for the Majority First Lien Noteholders**

NY\7094060.4{00347319-2}