UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-50748 |
| | § | |
| HARVEST OIL & GAS, LLC, *ET AL*[1] | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

**MOTION OF ENERGY RESERVES GROUP II, LLC TO CONVERT CHAPTER 11 CASES TO CHAPTER 7 CASES PURSUANT TO BANKRUPTCY CODE § 1112**

Energy Reserves Group II, LLC ("ERG II"), in its capacity as a holder of (a) notes (the "First Lien Notes") issued under that certain Indenture, dated November 22, 2013 (as amended), by and among Saratoga Resources, Inc. ("Saratoga") and The Bank of New York Mellon Trust Company, N.A., ("BONY") as trustee, and (b) notes (the "Second Lien Notes" and together with the First Lien Notes, the "Notes") issued under that certain Indenture, dated July 12, 2011 (as amended), by and among Saratoga and BONY, as trustee, through its undersigned counsel, hereby files this motion seeking entry of an order converting the chapter 11 cases of Saratoga and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors") to cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). In support of this motion, ERG II respectfully states as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. General Background**

1. On June 18, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108. On

---

[1] The chapter 11 cases of Saratoga Resources, Inc. (15-50749), The Harvest Group LLC (15-50750), LOBO Operating, Inc. (15-50751), and LOBO Resources, Inc. (15-50752) are being jointly administered with the chapter 11 case of Harvest Oil & Gas, LLC (15-50748) pursuant to a court order [Dkt. No. 4] entered on June 19, 2015.

June 19, 2015, this Court entered an order [Dkt. No. 4] jointly administering the Debtors' cases for procedural purposes. No trustee or examiner has been appointed in the Debtors' cases.

2. On July 24, 2015, the United States Trustee for the Western District of Louisiana (the "United States Trustee") appointed an official committee of the Debtors' unsecured creditors (the "Creditors' Committee") [Dkt. No. 171].[2] On August 11, 2015, the United States Trustee appointed an official committee of the Debtors' equity holders (the "Equity Committee") [Dkt. No. 290].[3]

3. On August 3, 2015, the Debtors filed their schedules of assets and liabilities [Dkt. No. 240] (the "Schedules"), which valued the Debtors' assets at approximately $98 million and the Debtors' liabilities at more than $206 million as of the Petition Date. The Debtors' prepetition liabilities are comprised of:

- approximately $57.2 million in respect of the First Lien Notes, consisting of $54.6 million of principal obligations and at least $2.6 million of prepetition interest;

- approximately $141.3 million in respect of the Second Lien Notes, consisting of $125.2 million of principal obligations and at least $16.1 million of prepetition interest; and

- an estimated $6.5 million in unsecured claims, including trade claims.

**B.     The Debtors' Use of Cash Collateral**

4. On the Petition Date, the Debtors filed the *Emergency Motion for Entry of Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 for Interim and Final Orders: (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Modifying the Automatic Stay; (4) Scheduling and Approving the Method of Notice for Final*

---

[2] The Creditors' Committee consists of Harvest Operating, LLC, Buras Oilfield Services, LLC, Gaubert Oil Co., M & M Wireline & Offshore Service, and X-Chem, LLC.

[3] The Equity Committee consists of Joseph R. Dancy, Wade Davis, William D. Fletcher, Eugene Greenstein, and Maders & Sons Marine Rental, LLC.

*Hearing; and (5) Providing Related Relief* [Dkt. No. 19]. On June 24, 2015, this Court entered an order [Dkt. No. 39] authorizing the Debtors to use the cash collateral of the holders of the Notes on an interim basis, and on September 21, 2015, this Court entered an order [Dkt. No. 481] (the "Final Cash Collateral Order") authorizing the Debtors to use cash collateral on a final basis through October 30, 2015.

5. During the course of the Debtors' cases and pursuant to the terms of the Final Cash Collateral Order, the Debtors and the holders of a majority in aggregate principal amount of the then-outstanding First Lien Notes (the "Majority First Lien Noteholders") negotiated and entered into numerous stipulations extending the time period during which the Debtors were entitled to use cash collateral [Dkt. Nos. 551, 567, 577, 606, 661, 693, 712, 731, 745, 756, 770]. Pursuant to the terms of the most recent stipulation [Dkt. No. 770], the Debtors are authorized to use cash collateral through March 18, 2016.

**C.     ERG II's Purchase of Notes**

6. On March 14, 2016, ERG II executed that certain Note Purchase and Sale Letter Agreement whereby ERG II purchased all of the Notes held by Blackstone/GSO Capital Solutions Fund L.P., Blackstone/GSO Capital Solutions Overseas Master Fund L.P., Stonehill Master Fund Ltd. and Stonehill Institutional Partners, L.P. Accordingly, ERG II now holds 100% of the First Lien Notes in the approximate amount of $54.6 million, plus accrued interest, and approximately 75% of the Second Lien Notes in the approximate amount of $97.6 million, plus accrued interest.[4] The Notes are secured by substantially all of the Debtors' assets.

---

[4] Upon information and belief, the Second Lien Notes not held by ERG II, in the approximate amount of $27.6 million, plus accrued interest, are held by approximately 20 financial institutions or funds.

## II. JURISDICTION

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 1112(b).

## III. REQUEST FOR RELIEF

10. By this motion, ERG II respectfully requests that the Court convert these chapter 11 cases to chapter 7 cases for cause pursuant to Bankruptcy Code section 1112(b).

## IV. SUPPORTING AUTHORITY

11. Bankruptcy Code section 1112(b)(1) provides that,

> . . . on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). If there is cause to convert a case, a bankruptcy court must do so pursuant to the express language of section 1112(b), unless it specifically identifies "unusual circumstances" that warrant the continuation of the case. *In re AHF Dev., Ltd.*, 462 B.R. 186, 194 (Bankr. N.D. Tex. 2011); *In re New Towne Dev., LLC*, 404 B.R. 140, 146 (Bankr. M.D. La. 2009). Bankruptcy Code section 1112(b)(4) enumerates several bases for conversion for "cause," but the list is not exhaustive, and a bankruptcy court may use its equitable powers to find that there are additional reasons to grant relief under section 1112(b). *See In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015); *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 2465938, at *3 (Bankr. S.D. Tex. June 2, 2014); *In re Global Ship Sys., LLC*, 391 B.R. 193, 205 (Bankr. S.D. Ga. 2007). The factor particularly

4

applicable to the Debtors' cases is "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A).

12. Considering the Debtors' Schedules, balance sheet and cash flow reports, the Debtors are clearly insolvent. As stated above, as of August 3, 2015, when the price of oil was approximately $45 per barrel, the Debtors reported more than $200 million of liabilities and approximately $98 million of assets. Since that time, the price of oil has further fallen to approximately $37 per barrel, implying that the Debtors' assets are worth even less today than they were on August 3, 2015. Upon information and belief, the Debtors are projected to run out of cash in March 2016. The Debtors have been in continuing default of their interest payment obligations on the Second Lien Notes since December 31, 2014. Further, the trading prices for the Debtors' equity and secured debt reflect the market's view that the Debtors are hopelessly insolvent. The cash flow generated by the Debtors is grossly insufficient to satisfy the Debtors' administrative obligations, much less the Debtors' secured debt obligations. To the extent they are not already, the risk is high that the Debtors will soon become administratively insolvent. It is indisputable that the Debtors' equity holders will not receive any material distribution and that the holders of the Second Lien Notes will be significantly impaired. The Debtors have not proposed a plan or disclosure statement, nor have they indicated when they could do so. All of these facts lead to only one feasible conclusion: these cases must be converted to chapter 7. *See In re BH S & B Holdings, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010) (granting motion to convert where cases were administrative insolvent and secured creditor was no longer willing to finance chapter 11 cases); *In re Desmond*, 331 B.R. 42, 44 (Bankr. D. N.H. 2005) (converting

case where debtor was administratively insolvent and had failed to propose a plan with a reasonable likelihood of confirmation).

13. For months, the Debtors have been surviving on the Majority First Lien Noteholders' agreement to two-week extensions of the consensual use of cash collateral. Without any prospect for financing to fund a reorganization, it is clear at this stage that no feasible long-term strategy has materialized. Instead, the Debtors have continued to incur substantial administrative expenses in the form of professional fees for the Debtors, the Creditors' Committee, the Equity Committee and postpetition operations. These administrative expenses are not justified under the circumstances. *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986) ("resort to the protection of the bankruptcy laws is not proper under these circumstances because . . . there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria'"); *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (finding that a debtor "should not continue in control of its business beyond a point at which reorganization no longer remains realistic," if creditor recoveries are eroding); *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988) ("All that need be found is that the estate is suffering some diminution of value."). In light of the Debtors' failure to propose a strategy that would fund a chapter 11 plan of reorganization, ERG II believes that these cases should be converted to chapter 7 and that the process instead should be effectuated by a chapter 7 trustee. *See In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 9792582, at *14 (Bankr. S.D. Tex. Feb. 10, 2013) (citing *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 563 (Bankr. M.D. Pa. 2007)) (converting chapter 11 case to chapter 7 where, among other things, debtor was experiencing declining assets and continuing losses under current management and could provide no realistic, substantiated plans for successful reorganization).

14. Remaining in chapter 11 appears to have little or no benefit to the Debtors' estates or their creditors. There is no evidence on the record that the debtors-in-possession have any special knowledge or skills that would lead to a better result than liquidation under the purview of a chapter 7 trustee. More importantly, there is no evidence that the Debtors can effectuate any chapter 11 plan. The Debtors' inability to generate revenue, and their incurrence of substantial administrative expenses, represents a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" under Bankruptcy Code section 1112(b). Indeed, "if there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'être* . . . ." *In re Namer*, 141 B.R. 603, 607 (Bankr. E.D. La. 1992) (quoting *In re Ironsides, Inc*., 34 B.R. 337, 339 (Bankr. W.D. Ky. 1983)). As a result, these cases should be converted to chapter 7.

WHEREFORE, ERG II respectfully requests that this Court (i) convert these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code and (ii) grant ERG II such other relief as may be just and equitable.

Dated: March 16, 2016
       New Orleans, Louisiana

/s/ Andrew A. Braun_____
**GIEGER, LABORDE & LAPEROUSE L.L.C.**
Andrew A. Braun (Bar No. 3415)
Michael E. Hill (Bar No. 25708)
701 Poydras Street, Suite 4800
New Orleans, LA 70139
Telephone: (504) 561-0400
Fax: (504) 561-1011
abraun@glllaw.com
mhill@glllaw.com

**-and-**

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Charles R. Gibbs (Bar No. 07846300)
(*pro hac vice* pending)
Ashley R. Beane (Bar No. 24064870)
(*pro hac vice* pending)
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Telephone: (214) 969-2800
Fax: (214) 969-4343
cgibbs@akingump.com
abeane@akingump.com

*Attorneys for Energy Reserves Group II, LLC*